UNITED STATES of America, Plaintiff,

v.

Stanley SIEGEL, Defendant.

No. 83 Cr. 608 (RWS).

United States District Court,
S.D. New York.

March 14, 1984.

Rudolph W. Giuliani, U.S. Atty., S.D.N.Y. by Jane Parver, Asst. U.S. Atty., New York City, for plaintiff.

Goldman & Hafetz, New York City, for defendant; Frederick P. Hafetz, New York City, of counsel.

## OPINION

SWEET, District Judge.

Stanley Siegel pleaded guilty last fall to a misdemeanor, a violation of 18 U.S.C. §§ 3150(2) and Section 2 for aiding a defendant, Ralph Rogers, not to appear in court. Quite appropriately, he challenged the government to establish the facts which have been set forth in its sentencing memoranda and to that end witnesses testified and exhibits were presented on February 9, 16 and on March 7, 1984. In addition, he submitted a letter, and the letters submitted on his behalf by his wife and son and by distinguished and courageous Justices of the state court and eminent and distinguished fellow members of the defense bar, and concerned friends in the community. There was also a probation report and the sentencing memoranda of able defense counsel and that of the government.

The court is grateful to skilled counsel for their very considerable help in this sad, difficult and harrowing task which requires passing judgment on a man, a member of the bar, and balancing his crime, his motivation, his suffering with the standards and needs of the society.

Of course, the poignancy and if you will, the tragedy of this conviction, derives from Siegel's status as a well respected, effective member of the bar of almost 30 years standing, with a reputation and performance in his profession which has provided him, his wife and three children with a stable and honorable living, respect and friendship. He admitted assisting a young man, Ralph Rogers, in remaining a fugitive in the period from 1971 to 1981 while he was under indictment for drug dealing. Siegel thus jeopardized his accomplishments, his liberty and his ability to perform as a lawyer. For that reason and because of the difficulties of this sentence and because a member of the bar of this court is involved, this brief memorandum opinion will be filed and will constitute the sentence to be imposed. To set forth the basis of the sentence I feel it necessary to find certain facts, my conclusions with respect to Siegel's motivation, and the purpose of this sentence.

Rogers, when Siegel first represented him, was an attractive young man with big ideas. Siegel represented him ably, and Rogers made his own decisions regarding flight, fearful as he was about his ability to endure incarceration. After he fled, he contacted Siegel, Siegel counselled him with respect to his fugitive status, and helped him conceal his true identity. Siegel formed a corporation for him, which he intended to employ in operating his business which was the distribution of marijuana. Siegel also represented associates of Rogers and helped Rogers in his search for security after his apartment was robbed. Through his own dealings and personal relationship with Rogers, his representation of Rogers' associates, the use of Siegel's office as a communication center, and his own common sense, Siegel knew Rogers was selling substantial quantities of marijuana and occasionally other drugs as well. He also knew that this activity was producing a substantial amount of cash, and counselled Rogers with respect to the disposition of this cash. Siegel's practice benefitted by this relationship and by the loose fee arrangements and Rogers' practice of turning over cash for services rendered or by way of informal retainer for future services. No adequate accounting was maintained for all of this. Siegel failed to come forward forthrightly when questioned by the government when this pattern began to unravel.

There is, however, no evidence of any direct participation in illegal drug activity on Siegel's part, but the services he rendered served to assist Rogers in the conduct of the latter's business.

I have based my findings primarily on the basis of the testimony of Mrs. Horowitz, which I found credible, perhaps because of her recent conversion, and to a far lesser degree Chronin and Rogers. Rogers clearly has symptoms of grandiosity. However his disorder may affect his evaluation of reality, it does not destroy the value of recollected facts.

The testimony here has been primarily of immunized government witnesses. They have a motivation to support the government's contention. They have described in quite stark and striking terms the desperate and disturbed life of drug dealers and users where there is so much money, so much cash that there is nothing left to buy, and no one left to trust. However, Siegel had earned their trust and in the somewhat offhand fashion I have described, Siegel did assist them. I make no finding on the DD5 question. The issue is indeed a sideshow and may well be the subject of further investigation by the authorities. Further, it is not critical to this sentence and I see no need to pass judgment on the loyal Andrew Donlevy.

Why then did Siegel determine to assist Rogers to remain a fugitive and to knowingly violate the law? By doing so, Siegel blurred the sharp edge of his responsibility as a lawyer and an officer of the court and lost sight of that boundary between professional performance and personal participation. Indeed, his slipshod accounting, an object of amusement to some, was simply an indication of slipshod ethics. It may well be that the easy money had an attraction, but that was not what led Siegel out of bounds. Instead, it was what one of his former partners described as "low self esteem." Siegel has always made excessive efforts to please, to serve others, to help others—an endearing quality which has earned him love and loyalty—which was I believe the very purpose of his conduct. However, this service to others became extreme and in the case of Rogers destroyed his independence and judgment. More than anything else, I believe the cause for his illegal conduct was not simply ignorance or greed, but resulted from a need to serve, to be appreciated, a need which became pathological.

Whatever the motivation, Siegel's acts became significant because of his status as an attorney and a member of the defense bar. The importance of the concept of justice creates a higher standard for those responsible for its operation. His undeniable suffering these past two years, his painful self realization and his status as a first offender would have earned him probation if he were an ordinary defendant. But he is not.

Incarceration is punishment, plain and simple. It will serve no rehabilitative purpose, but only to signal others that crime by lawyers will not be condoned by courts. Further, if the purpose of punishment is proper and it is correctly meted out, it may serve to assist others who have yet to consider the extent of appropriate punishment and the effect of Siegel's acts on his career.

I have watched Siegel during these proceedings, read what others have said about him, and believe he has undertaken the steps which will restore his self esteem and that an appropriate sentence is significant to that end. I also believe that he has, or will develop, the strength to overcome the adversities yet ahead. He has, and will retain, the support of a loving family and loyal friends.

With these considerations in mind, I impose a jail term of one year, suspend its execution pursuant to 18 U.S.C. § 3651 except for a term of three months which will be served in a jail type or treatment institution and place Siegel on probation for the remainder of his sentence, a condition of which shall be the performance of 250 hours of community service unrelated to the practice of law. A committed fine of $1,000 will also be imposed.

**IT IS SO ORDERED.**